**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **In Re THE COMPLAINT AND PETITION OF ARTHUR A. DEGEORGE**, as owner or managing owner of a certain 2014 Steiger Craft boat, **IN A COMPLAINT AND PETITION FOR EXONERATION FROM OR LIMITATION OF LIABILITY**. | Civil Action No. 20-5594 (MAS) (LHG) <br><br> **IN ADMIRALTY** <br> **MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on two Motions for Summary Judgment, the first filed by Defendant Borough of Belmar ("Belmar") (ECF No. 17), and the second filed by Defendant Arthur A. DeGeorge ("DeGeorge," and collectively with Belmar, "Defendants") (ECF No. 18). Plaintiff John Marincola ("Marincola") opposed both motions (ECF Nos. 21, 22), and Belmar and DeGeorge replied (ECF Nos. 24, 23). The Court has carefully considered the parties' submissions and decides the matter without oral argument under Local Civil Rule 78.1. For the reasons below, the Court grants both motions.

**I.   BACKGROUND**

On May 24, 2018, DeGeorge and a group of friends went to the Belmar Manutti Marina (the "Marina") to embark on a fishing trip. (Def. Belmar Statement of Undisputed Facts ("DSUF") ¶¶ 1, 10, ECF No. 17-2; Def. DeGeorge Statement of Material Facts ("SOMF") ¶ 1, ECF No.

18--1.)[1] DeGeorge invited several of his friends, including Marincola, on his boat, the "Miss Zena" (the "Boat"). (DSUF ¶ 10; SOMF ¶ 2.) When DeGeorge arrived at the Marina, he saw fishing line tied around the docks. (SOMF ¶ 8.) In contrast, prior to getting on the Boat, Marincola did not notice any fishing lines. (DSUF ¶ 16.) Marincola fell when he entered the Boat and injured his knee. (*Id.* ¶ 20.) Marincola did not remember either of his feet catching on anything at the time he started to fall. (*Id.* ¶ 19.) Nonetheless, the group proceeded with the fishing trip even after Marincola fell, and it wasn't until they returned that Marincola pieced together what happened. (*Id.* ¶¶ 21-22.) Marincola determined that a fishing line must have caused his fall. (*Id.* ¶ 22.) He also determined that he was injured and needed medical assistance. (*Id.* ¶ 5.)

On February 13, 2020, Marincola filed a Complaint in the Monmouth County Superior Court asserting claims against Belmar and DeGeorge, alleging that their negligence led to his injury from falling while onboarding the Boat. *Marincola v. Borough of Belmar et al.*, No. MON--L-535-20 (N.J. Super. Ct. Law Div. Feb. 14, 2020). On May 6, 2020, DeGeorge filed a Complaint and Petition for Exoneration From or Limitation of Liability in this Court. (Compl. and Pet., ECF No. 1.) On February 23, 2021, Marincola filed a Notice of Removal, invoking this Court's ancillary jurisdiction and effectively consolidating the two actions. (ECF No. 7.) The parties completed discovery according to the Scheduling Order (ECF No. 15), and these Motions for Summary Judgment followed (ECF Nos. 17, 18).

---

[1] Considering this matter comes before the Court on Defendants' Motions for Summary Judgment, the Court relies only on Belmar's Statement of Undisputed Facts (DSUF) and DeGeorge's Statement of Material Facts (SOMF) for which Marincola agrees. (*Compare* DSUF, *with* Pl.'s Resp. to Def. Belmar Statement of Undisputed Facts, ECF No. 21; and *compare* SOMF, *with* Pl.'s Resp. to Def. DeGeorge Statement of Material Facts, ECF No. 22.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). In determining whether a genuine dispute of material fact exists, the court must construe all facts and inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met that threshold burden, the nonmoving party must identify "specific facts showing that there is a genuine [dispute] for trial." *Charney v. Wildwood*, 732 F. Supp. 2d 448, 452 (D.N.J. 2010). Thus, to survive summary judgment, the nonmoving party must identify "affirmative evidence that contradict[s that] offered by the moving party." *Id.* "[M]ere allegations, conclusions, conjecture, and speculation will not defeat summary judgment." *Rakowski v. Brigantine*, No. 19-21847, 2022 WL 326992, at *1 (D.N.J. Feb. 3, 2022).

## III. DISCUSSION

Belmar moves for summary judgment on all three claims against it: (1) injury caused by condition of property under N.J.S.A. 59:4-2; (2) negligent hiring; and (3) negligent training. DeGeorge moves for summary judgment on all common law negligence claims against him, as well as for exoneration under the Limitation of Liability Act. The Court addresses each motion in turn.

## A. Belmar's Motion for Summary Judgment Must Be Granted.

### 1. N.J.S.A. 59:4-2

#### a. Statutory Framework

The New Jersey Tort Claims Act (the "Act") establishes limitations of liability for public entities and defines parameters for plaintiffs' recovery. *See* N.J.S.A. 59:1-1 *et seq.* Without a specific provision in the Act providing for liability, the public entity is immune from suit. *Id.* Courts have consistently stated that immunity under the Act "is the rule, and liability the exception." *Bombace v. Newark*, 593 A.2d 335, 341 (N.J. 1991); *see also Kolitch v. Lindedahl*, 497 A.2d 183, 186 (N.J. 1985). The legislative policy of the Act was "to establish immunity as the general rule." *Bombace*, 593 A.2d at 341; *see also Manna v. State*, 609 A.2d 757, 759 (N.J. 1992) ("Immunity is the dominant consideration.").

Under the Act, a public entity can be liable for injury caused by a condition of its property if the plaintiff establishes:

> (1) that the property was in dangerous condition at the time of the injury;
> (2) that the injury was proximately caused by the dangerous condition;
> (3) that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred;
> (4) that either:
>    a. a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or
>    b. a public entity had actual or constructive notice of the dangerous condition under section N.J.S.A. 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition; and
> (5) that the action the entity took to protect against the condition or the failure to take such action was palpably unreasonable.

N.J.S.A. 59:4-2; *Clark v. Wildwood*, No. A-110-21, 2022 WL 3205805, at *2 (N.J. Super. Ct. App. Div. Aug. 9, 2022). If one or more of these elements is not satisfied, the claim must fail. *Stewart*

4

v. *N.J. Tpk. Auth./Garden State Parkway*, 268 A.3d 346, 354 (N.J. 2022) (citing *Polzo v. Essex*, 960 A.2d 375, 384 (N.J. 2008)).

> b. Summary Judgment as to N.J.S.A. 59:4-2 is Warranted.

Belmar argues that Marincola has failed to demonstrate (1) that a dangerous condition caused his injury, (2) that Belmar had notice of the condition, and (3) that Belmar's actions or inactions in failing to protect him against the unreasonably dangerous condition were palpably unreasonable. Because the Court finds that Marincola failed to demonstrate that the fishing line caused his injury, it does not consider the remaining elements.

The "threshold issue" in determining proximate cause is "whether the alleged dangerous condition of public property constituted a cause in fact of plaintiff's loss." *Morey v. Wildwood Crest*, 2007 WL 2963324, at *2 (N.J. Super. Ct. App. Div. Oct. 12, 2007) (internal quotation omitted). "[I]f the particular event would have occurred without [the dangerous condition]," then the condition is not the proximate cause. *Id.* (internal quotation omitted). The plaintiff bears the burden to present at least some evidence to support causation.

Here, Marincola did not allege any specific facts related to the causation of his injury that demonstrate a genuine dispute for trial. Belmar argues that Marincola does not know what caused him to fall. (Def.'s Moving Br. 13-15, ECF No. 17-1.) It is now Marincola's burden to show facts that give rise to a genuine dispute—specifically, to show facts that the fishing line caused him to fall. But Marincola falls short of meeting his burden, even at this juncture. Marincola provides the Court with no facts establishing that the fishing line caused his injury. At best, Marincola states that he can "assume" or "piece[] . . . together" how his injury occurred, but at the core, Marincola does not know if his feet caught on anything that caused him to fall. (DSUF ¶¶ 19, 20, 22.) Marincola argues that there are facts that "could be interpreted by the jury to indicate that he was caused to fall by the fishing line." (Pl.'s Opp'n Br. 23-24, ECF No. 21.) Marincola himself,

5

however, did not know what caused his injury (Def.'s Moving Br. Ex. C 17 ("Q. Do you remember either of your feet catching on anything at the time you started to fall? A. No, it just happened so fast.")), so he pieced together and assumed the causation and now wants the Court to do the same (DSUF ¶¶ 20, 22). But the Court is not afforded the same luxury. Marincola is asking this Court to do precisely what it cannot do: rely on speculation to defeat a motion for summary judgment. *See Rakowski*, 2022 WL 326992, at *1.

This is simply not enough to overcome summary judgment. The Court, accordingly, finds that there is no genuine dispute as to any material fact, and Belmar is entitled to summary judgment as a matter of law.

    2.    *Negligent Hiring and Negligent Training*

        a.    <u>Common Law Elements</u>

An employer who negligently hires an individual who is incompetent or unfit for the job may be liable for any injuries arising from the employee's failure to exercise due care. *Lingar v. Live-In Companions, Inc.*, 692 A.2d 61, 64-65 (N.J. Super. Ct. App. Div. 1997). This cause of action arises from tort principles of negligence and foreseeability as well as principles of agency and vicarious liability. *Id.* at 65 (internal citation omitted). Negligent hiring is intended to cover injuries outside of the scope of the employee's responsibilities, not overlap with causes of action under theories of agency and vicarious liability. *Id.*; *see also Sandy v. Orange*, No. A-34-19, 2021 WL 3197029, at *6 (N.J. Super. Ct. App. Div. July 29, 2021).

A cause of action for negligent hiring has two fundamental requisites: (1) employer knowledge that the employee is dangerous or otherwise unfit for the task; and (2) through the negligence of the employer in hiring the employee, the employee's incompetence, unfitness or dangerous characteristics proximately caused the injury. *Lingar*, 692 A.2d at 65 (quoting *Di Cosala v. Kay*, 450 A.2d 508, 516 (N.J. 1982)).

6

A cause of action for negligent training has essentially the same standard except framed in the context of supervision rather than hiring. *G.A.-H. v. K.G.G.*, 210 A.3d 907, 916 (N.J. 2019). The plaintiff must prove: (1) an employer knew or had reason to know that the failure to supervise or train an employee in a certain way would create a risk of harm; and (2) that risk of harm materializes and causes the plaintiff's damages. *Id.* Negligent training claims are not forms of vicarious liability but are based on the direct fault of the employer. *Sandy*, 2021 WL 3197029, at *6 (internal citation omitted).

          b.        <u>Summary Judgment as to Marincola's Negligent Hiring and Negligent Training Claims is Warranted.</u>

Belmar's argument in support of summary judgment on Marincola's negligent hiring and negligent training claims is simple: there are *no* facts—much less disputed facts—to support either of the claims. (Def.'s Moving Br. 22-24 ("[T]he record is barren of any evidence . . . ."; and "Such facts do not exist.").) Marincola states that he "anticipated" that he would get additional facts regarding the employees present on the day of the injury and any policies that Belmar used for training. (Pl.'s Opp'n Br. 28-29.) Marincola maintains that Belmar "never identified" these employees and policies during discovery, and therefore, it is "impossible for the [P]laintiff to prove that a specific unidentified employee was either negligently hired or trained." *Id.*

The Court agrees that the dearth of evidence in support of Marincola's negligent hiring and supervision claims proves fatal. The Court first reviews relevant deadlines. The deadline for factual discovery was March 31, 2022. (Am. Scheduling Order, ECF No. 15.) The Court ordered that "[n]o discovery is to be issued or engaged in beyond that date and no further extensions of this date will be permitted by the Court." *Id.* The deadline for filing dispositive motions was May 27, 2022. *Id.* Belmar and DeGeorge's Motions for Summary Judgment were both filed in accordance with this deadline. (*See* ECF Nos. 17, 18.)

Under Federal Rule of Civil Procedure 56(d), if a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition to summary judgment, the Court may (1) defer the motion or deny it, (2) allow time to obtain affidavits or declarations or to take discovery, or (3) issue any other appropriate order. Fed. R. Civ. P. 56(d); *In re Avandia Mktg., Sales and Prods. Liab. Litig.*, 945 F.3d 749, 761 (3d Cir. 2019). Rule 56(d) is particularly pertinent where "discovery requests [are] outstanding or where relevant facts are under control of the party moving for summary judgment." *In re Avandia*, 945 F.3d at 761 (quoting *Shelton v. Bledsoe*, 775 F.3d 554, 568 (3d Cir. 2015)).

To take advantage of this provision, however, the party opposing summary judgment "must state by affidavit the reasons for his inability" to present facts "essential to justify his opposition," and "these reasons must be genuine and convincing to the court rather than merely colorable." *Mid-South Grizzlies v. Nat'l Football League*, 720 F.2d 772, 779 (3d Cir. 1983) (quoting *Robin Constr. Co. v. United States*, 345 F.2d 610, 614 (3d Cir. 1965)). "It is not enough to rest upon . . . uncertainty." *Id.* Marincola has filed no such affidavit or declaration here. The Court, accordingly, evaluates Belmar's Motion for Summary Judgment upon the record before it.

As to the claim of negligent hiring, Marincola provides no facts that support either required element. (*See generally* Pl.'s Opp'n Br.) Marincola points to no employee or employee history that should have led Belmar to know that the employee was dangerous or otherwise unfit for the employment. Marincola has similarly not alleged any conduct by any employee that proximately caused the injury. As the factual record stands, even with the benefit of discovery, Marincola fails to point to any Belmar employee that was even in the proximity of where he suffered an injury. Thus, Marincola essentially falls back on Belmar's alleged premises liability which the Court addressed above. Summary judgment is appropriate here. *See Brijall v. Harrah's Atl. City*, 905 F. Supp. 2d 617, 620-21 (granting summary judgment on negligent hiring claim where plaintiff

8

produced no evidence from which a reasonable jury could conclude the employer knew or should have known of the employee's unfitness, incompetence, or dangerous attributes).

Marincola equally provides no facts to support his claim for negligent training. (*See generally* Pl.'s Opp'n Br.) Marincola has not alleged any facts that Belmar knew or had reason to know that the failure to supervise or train any employee in a certain way would create a risk of harm, and Marincola has alleged no facts that any conduct by any employee proximately caused the injury. Summary judgment is again appropriate. *See Brijall*, 905 F. Supp. 2d at 621 (granting summary judgment as to negligent training claim where plaintiff has not "provided any details about [employer's] training policy, or pointed to any aspects he finds deficient . . . has not deposed any witnesses to gather information about how [employees] are trained . . . and has not put forth any expert testimony as to how [employees] should properly be trained").

Consequently, Belmar's Motion for Summary Judgment as to the negligent hiring and negligent training claims is granted.

### B.  DeGeorge's Motion for Summary Judgment Must Be Granted.

DeGeorge moves for summary judgment in two respects: (1) as to all claims of common law negligence; and (2) as to claims of negligence or conditions of unseaworthiness of DeGeorge's vessel pursuant to the Limitations of Liability Act (the "Limitations Act") and the Supplemental Rules for Admiralty or Maritime Claims ("Rule (F)").[2] The Court addresses each below.

#### 1.  *Framework for Common Law Negligence*

Marincola claims that DeGeorge was negligent in three ways: (1) for failing to inspect the docks; (2) failing to warn of the fishing line; and (3) failing to assist Marincola in boarding his boat. (*See* Compl. ¶¶ 34-35, ECF No. 7-2.) It is settled law that property owners owe legal duties

---

[2] 46 U.S.C. § 30505; Fed. R. Civ. P., Supp. R. for Admiralty or Mar. Claims and Asset Forfeiture Actions, Rule (F).

to others on their property. *See Hallacker v. Nat'l Bank & Tr. Co.*, 806 F.2d 488, 490 (3d Cir. 1986). But the precise legal duty owed depends on what type of visitor is on the owner's property: trespasser, licensee, or invitee. *Id.*

Property owners do not owe any duty to trespassers—those impermissibly occupying the premises—other than to refrain from "willfully injurious acts." *Id.* (citing *Renz v. Penn Cent. Corp.*, 435 A.2d 540, 553 (N.J. 1981)).

Property owners owe a duty to licensees—those allowed onto the premises by consent and who enter the premises for their own purposes. *Id.* at 490-91 (citing *Synder v. I. Jay Realty Co.*, 153 A.2d 1, 5-6 (N.J. 1959)). If the property owner has knowledge of a dangerous condition and believes the licensee is unlikely to discover it, he must make the condition reasonably safe or warn the licensee of it. *Id.* at 491 (citing *Handleman v. Cox*, 187 A.2d 708, 712 (N.J. 1962)). Property owners have no duty to licensees to inspect the conditions of their property nor to maintain the land in a safe condition. *Id.*

Property owners' most stringent duty is to invitees—those invited onto the premises by the property owner, generally for some business purpose. *Rowe v. Mazel Thirty, LLC*, 34 A.3d 1248, 1253 (N.J. 2012) (citing *Lordi v. Spiotta*, 45 A.2d 491 (N.J. 1946)). Property owners owe invitees a duty of reasonable care and a duty to provide a "reasonably safe place to do that which is within the scope of the invitation." *Id.* (citing *Butler v. Acme Markets*, 445 A.2d 1141, 1143 (N.J. 1982)). Business invitees are invitees on the premises to conduct business or for the profit of the property owner. *Id.* (citing *Butler*, 445 A.2d at 1143). New Jersey courts have extended a *commercial* property owner's duty of care to business invitees to include areas of the premises used for the "ingress and egress" of the invitees, even when the property owners lack control over the premises. *See Monaco v. Hartz Mountain Corp.*, 840 A.2d 822, 831 (N.J. 2004) ("[O]ur courts have extended a commercial landowner's duty . . . to cases in which the landowner had no control over the

dangerous condition and the condition was not located on its property."); *see also Warrington v. Bird*, 499 A.2d 1026, 1029 (N.J. Super. Ct. App. Div. 1985) (imposing a duty on a restaurant owner when customers, crossing a public road intersecting the restaurant and its parking lot, were hit by a car speeding on the public road).

        2.    *Summary Judgment as to Marincola's Common Law Negligence Claims is Warranted.*

Here, the facts demonstrate that Marincola was a licensee when he boarded DeGeorge's Boat. Marincola does not dispute—and, in fact, concedes—that he was a social guest (not a visitor for business purposes) when he came to fish for the day. (*See* Pl.'s Opp'n Br. 11, ECF No. 22.) DeGeorge, correspondingly, owed a duty to warn Marincola of any dangerous condition on his property that he believed Marincola was unlikely to discover, and to make the condition reasonably safe for Marincola. DeGeorge did not owe a duty related to any dangerous conditions on premises used for ingress or egress because Marincola was not a business invitee, and the Boat is not commercial property.

The dispositive requirement here is that the dangerous condition must be *on* the owner's property. *See Hopkins v. Fox & Lazo Realtors*, 625 A.2d 1110, 1113 (N.J. 1993) ("The traditional common law approach to landowner . . . tort liability toward a person who has been injured because of a dangerous condition on private property [depends] on [their] status . . . at the time of the injury."). To be sure, if the dangerous condition in question—the fishing line—were somehow affixed to DeGeorge's boat, the analysis would be entirely different. But it was not. (SOMF ¶¶ 8, 24.) Indeed, the core of Marincola's grievance was a condition not attached to DeGeorge's property at all—the fishing line was tied up around the dock, which was property of the Marina. (*Id.*) Marincola cites no authority stating that a property owner can be responsible for a dangerous condition that injures a licensee before the licensee enters the property. Nor does Marincola

11

provide any authority that a property owner must pave a safe pathway to his property through publicly owned land for a social guest, clearing out all potential hazards in the way. DeGeorge may wish his social guests fair winds as they venture out to sea, but he has no legal duty to ensure they safely make it to his vessel. So the Court will not create such authority now.

DeGeorge did not violate his duty to Marincola and was not negligent. Summary judgment must be granted as to the common law claims of negligence.[3]

> 3. *Summary Judgment as to Marincola's Claims of Negligence or Conditions of Unseaworthiness of the Boat Pursuant to the Limitations Act is Warranted.*

Rule (F) and the Limitations Act allow a shipowner to limit or avoid liability arising out of claims under admiralty law. The Court must engage a two-step inquiry to determine whether exoneration from or limitation of liability is appropriate for a shipowner. *In re Complaint of Cirigliano*, 708 F. Supp. 101, 103 (D.N.J. 1989). First, the court must determine what acts of negligence or conditions of unseaworthiness caused the accident. *See Bankers Tr. Co. v. Bethlehem Steel Corp.*, 761 F.2d 943, 948 (3d Cir. 1985). This burden lies on the plaintiff. *Cirigliano*, 708 F. Supp. at 103. Second, if this burden is satisfied, "the burden of proof shifts to the shipowner to show an absence of 'privity or knowledge.'" *Id.* (citing *Coryell v. Phipps*, 317 U.S. 406, 409 (1943)).

As discussed above, Marincola has not provided any facts that demonstrate DeGeorge's negligence. Marincola's claims that DeGeorge had a duty to inspect or a duty to warn are misplaced as there was no dangerous condition on DeGeorge's property of which to warn Marincola. (SOMF ¶¶ 8, 24.) Marincola seems to entirely ignore this requirement in opposing

---

[3] The Court also finds that, to the extent Marincola argues that there was a duty for DeGeorge to assist him into the Boat, this duty does not exist. *See Mattaliano v. Comstock Yacht Sales*, 2009 WL 1514945, at *10 (N.J. Super. Ct. App. Div. June 2, 2009). Marincola does not dispute this legally or factually. (*See generally* Pl.'s Opp'n Br.)

summary judgment, jumping directly to whether DeGeorge had privity and knowledge. (Pl.'s Opp'n Br. 10-11.) The Court, however, does not reach that stage of the inquiry because the requisite acts of negligence have not been established.

Accordingly, summary judgment is granted and exoneration is appropriate under the Limitations Act because negligence has not been established.

### IV. <u>CONCLUSION</u>

For the foregoing reasons, the Court grants Defendants' Motions for Summary Judgment. An appropriate order will follow.

/s/ Michael A. Shipp<br>
**MICHAEL A. SHIPP**<br>
**UNITED STATES DISTRICT JUDGE**